UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CASEY, GERRY, SCHENK, FRANCAVILLA, BLATT & PENFIELD LLP and BIXBY, COWAN & GERRY JV,<br><br>Plaintiff,<br><br>v.<br><br>ESTATE OF ROBERT COWAN, SUZANNE DIMEFF, AND OLETA COWAN TRUST,<br><br>Defendant. | Civil No.    10cv821-CAB (BGS)<br><br>**ORDER (1) DENYING MOTION FOR INJUNCTION  [Doc. No. 74], (2) *SUA SPONTE* DISMISSING DIMEFF AS A PARTY TO THIS ACTION; (3) GRANTING IN PART MOTION TO DISCHARGE PLAINTIFF [Doc. No. 77]; (4) REQUIRING COUNSEL TO CONTACT MAGISTRATE JUDGE** |

I.  BACKGROUND

Plaintiff Casey Gerry Schenk Francavilla Blatt & Pennfield LLP ("Casey Gerry") is a law firm in San Diego.  Plaintiff Bixby, Cown & Gerry JV ("BCG JV") is a joint venture formed by certain plaintiffs' attorneys (including the now deceased Richard Gerry and Robert Cowan) in the Exxon Valdez litigation.  In this interpleader action, plaintiffs request the court to determine how to distribute the late Robert Cowan's share ("Cowan's Share") of the funds the BCG JV earned in the litigation (the "JV Funds").

Two of the  defendants claim the right to Mr. Cowan's share of the JV Funds – Estate of Robert Cowan ("Estate") and Robert Cowan's late mother's trust, the Oletta L. Cowan Trust ("Trust").  The third defendant, Suzanne Dimeff ("Dimeff"), is Mr. Cowan's sister, was previously the trustee of the Trust, and was also an associate at Casey Gerry who worked on the Exxon Valdez litigation.  Since Mr.

1

1    Cowan's death in 2003, the Trust and the Estate have been involved in probate litigation in Alaska

2    ("Probate Action"), which involves, among other things, their respective rights to Mr. Cowan's portion

3    of the Exxon Valdez attorneys' fees and costs.

4         Dimeff was an associate at Casey, Gerry from 1989 - 2000 and was one of the attorneys who

5    spent much of her time on the Exxon litigation while at the firm.  Although Dimeff was paid a salary, in

6    1993, Casey Gerry also agreed to pay her a portion of the attorneys' fees from the Exxon litigation.

7    Dimeff and Casey Gerry entered into an agreement entitled "Memorandum of Understanding of Firm

8    and Richard F. Gerry" ("the Agreement")[1].  Pursuant to the Agreement, Dimeff was entitled to "5% of

9    gross fees" collected in the Exxon litigation by the BCG JV.  Upon her exit in 2000, Casey Gerry

10   affirmed its agreement with Dimeff and agreed to reconsider the amount (the 5%) in the Agreement if

11   Dimeff engaged in "extraordinary efforts" making the 5% inappropriate.  The Agreement has an

12   arbitration clause. [Doc. No. 107-1 at 9-10.]

13                              II.  PROCEDURAL HISTORY

14        Plaintiffs filed the complaint in interpleader on April 19, 2010. [Doc. No. 1.]  Plaintiffs have

15   deposited almost $2 million with the Court (the "*res*"). [Doc. Nos. 14 and 63.]   The Estate and the Trust

16   answered and filed counter/cross claims. [Doc. Nos. 12, 32-34, 39, 45.]  However, Dimeff was unable to

17   appear in this action because the Alaska probate court enjoined Dimeff from participating in other

18   proceedings, including this interpleader action, by issuing a Cease and Desist order at the request of the

19   Estate.

20        On August 11, 2010, The Trust filed a motion seeking to enjoin the Estate and the Alaska

21   probate court from preventing Dimeff from participating in this interpleader action. [Doc. No. 42.]   On

22   March 30, 2011, District Judge Lorenz granted the motion in part by ordering the Estate to withdraw the

23   motion in the Alaska Court that had led the Alaska court to issue a Cease and Desist order. [Doc. No.

24   64.] The Estate complied and Dimeff was allowed to participate in this action.  Dimeff filed an answer

25   [Doc. No. 71] and a counterclaim [Doc. No. 72].

26

27        [1] In her counterclaim, Dimeff alleges there were several agreements between Dimeff and the
     BCG JV partners regarding her additional compensation as an attorney working on the Exxon Valdez
28   litigation. [Doc. No. 72 at 3-4.] All the alleged agreements are collectively referred to as "the
     Agreement."

A. <u>Current motions pending in federal court</u>.

On May 2, 2011, the Trust and Dimeff filed a motion for injunction against plaintiffs. [Doc. No. 74.] On June 9, 2011, plaintiffs filed an opposition to the motion for injunction. [Doc. No. 79.] On June 15, 2011, defendants Trust and Dimeff filed a reply. [Doc. No. 81.]

On May 20, 2011, plaintiffs filed a motion to discharge plaintiffs. [Doc. No. 77.] On June 17, 2011, defendants Trust and Dimeff filed an opposition. [Doc. No. 83.] On June 17, 2011, defendant Estate of Robert Cowan ("Estate") filed a response to plaintiff's motion to discharge. [Doc. No. 84.] On June 24, 2011, plaintiffs filed a reply. [Doc. No. 85.]

On June 27, 2011, District Judge Sammartino vacated the hearing regarding the motion for injunction and took the matter under submission. [Doc. No. 86.] On July 7, 2011, District Judge Sammartino vacated the hearing regarding the motion to discharge and took the matter under submission. [Doc. No. 87.] On February 15, 2012, the case was transferred to District Judge Bencivengo. [Doc. No. 97.] On May 14, 2012, plaintiffs filed a supplemental request for judicial notice in support of opposition to motion for injunction. [Doc. No. 106.] On May 18, 2012, defendants Trust and Dimeff filed a supplemental request for judicial notice in support of motion for injunction. [Doc. No. 107.][2]  On May 23, 2012, the Court held a hearing with regard to both motions. [Doc. No. 108.]

B. <u>Current State Court Proceedings</u>.

On March 7, 2011, plaintiff Casey, Gerry filed a Petition to Compel Arbitration against Dimeff in the San Diego Superior Court, Case No. 37-2011-00087062-CU-PT-CTL (hereinafter the "Petition") with regard to Dimeff's claim for further monies under the Agreement. [Doc. No. 74-3.] Dimeff was served with the Petition on April 22, 2011. [Doc. No. 74-1 at 2.] On June 3, 2011, Superior Court Judge Timothy Taylor granted the Petition. [Doc. No. 107-1.] On February 27, 28, March 2 and 3, arbitration with regard to Dimeff's claims for additional monies under the Agreement was held before the Honorable Michael Orfield. [Doc. No. 106 at 2.] On March 27, 2012, Judge Orfield issued an arbitration award that was in favor of Casey, Gerry. [Doc. No. 106 at 3.] Plaintiff Casey, Gerry has filed a petition to confirm the award and Dimeff has filed a responsive petition to vacate the award, both of which are set for hearing on June 29, 2012. [Doc. No. 106 at 2; Doc. No. 107-2.]

[2]  Both requests for judicial notice [Doc. Nos. 106 and 107] are **HEREBY GRANTED.**

### III.  DISCUSSION

The motion for injunction requests that the Court enjoin plaintiffs from actions that would undermine the jurisdiction of this Court and which are not consistent with the basis for this Court's Order of March 30, 2011.  Specifically, Dimeff requests that this Court not allow the Petition and resulting arbitration to go forward in state court because all of the claims that the parties have with each other should be adjudicated in this court. [Doc. No. 74-1 at 2.]  Plaintiffs argue that the dispute between Dimeff and Casey Gerry with regard to her payment under the Agreement is completely separate from any dispute regarding the *res* that has been deposited in this court.  That is, whether Dimeff should be paid more monies under the Agreement has nothing to do with who should get the *res* that has been deposited with this court. [Doc. No. 79 at 7-8.]  Dimeff responds that her claim does involve the *res* because the Agreement was not just between herself and Casey, Gerry.  Rather, it was between herself, on the one hand, and Casey Gerry AND the BCG JV, which includes Robert Cowan, on the other hand.  If it is ultimately determined by a Court that Dimeff is owed more monies under the Agreement, then the monies will be owed not just by Casey Gerry, but by the BCG JV.  Therefore Cowan's position in the BCG JV will be charged its  portion of those monies, which in turn will affect the final amount of the *res*. [Doc. No. 81 at 4.]

In the motion to discharge, plaintiffs argue that they have deposited the *res*, that if any further monies come in for Cowan's share of the JV Funds, those will either be deposited into the *res* or distributed pursuant to whatever the Court decides as to who is entitled to the *res*.  Again, Plaintiffs argue that, as to the claim Dimeff has against Casey Gerry with regard to monies owed under the Agreement, that is for monies *outside of the res* and therefore should not be adjudicated in this action. [Doc. No. 77-1 at 7-8.]  Dimeff argues that her claim does involve the *res* because, if she ultimately prevails on her claim for additional monies under the Agreement, the final amount of the *res* will necessarily go down because Cowan will be charged his portion of the monies from the JV fund. [Doc. No. 83 at 2-3.]  In reply, plaintiffs argue that the *res* is the money presently deposited with the Court.  It is impossible for Dimeff's personal claim to have any effect on the funds already deposited with the court.  This is because the *res* represents the profits Robert Cowan would have in his possession at the present had he lived.  However, plaintiffs also acknowledge that, if Dimeff is awarded more than she has

already received from the BCG JV, then the Cowan Share will be liable for paying part of it just as all the other BCG JV members will be, which will be a decision of the joint venture. [Doc. No. 85 at 9.]

Both motions boil down to one question: Is Dimeff a proper party in this action?[3]  If Dimeff is a claimant to the *res* and has an independent counterclaim against the plaintiffs, then the counterclaim stays in this action and the plaintiffs should be kept in the litigation to defend against the counterclaim, rather than being dismissed after depositing the disputed funds with the court.  *See Libby, McNeill, and Libby v. City Nat. Bank*, 592 F.2d 504, 507 (9th Cir. 1978)("[T]he mere potentiality of independent stakeholder liability separate from liability for the interpleaded fund will not defeat interpleader jurisdiction.").  But is Dimeff a claimant to the interpleaded funds?  It appears that, in the past, Dimeff has made claims that she, as an individual, should receive some or all of the Cowan Share. [*See* Doc. No. 1 at 4-5, ¶ 13.] Presumably that is why plaintiffs named her as a defendant in this interpleader action.  However, once she appeared in this action, Dimeff clearly stated that she is not a claimant to the *res*.  In her answer to the complaint, Dimeff states the following:

> Defendant denies that Suzanne Dimeff is making a claim for the Cowan share as a beneficiary of Robert Cowan on behalf of herself, but admits she has a claim against Casey Gerry and the BCG JV for amounts due her under agreements with Plaintiffs.  As the Cowan Share is for profits of the partnership/joint venture and Suzanne Dimeff's payments are costs to the BCG JV, the payment to Dimeff of the sums owned [sic] under the agreements with the BCG JV and Casey Gerry may affect the amount of the Cowan Share.

[Doc. No. 71 at 5.]

In other words, Dimeff admits that she is not an individual claimant to the interpleaded funds.  Rather, she is a potential creditor of Casey Gerry and the BCG JV.  If she ultimately prevails in her claim against plaintiffs for her work as an attorney, then this may affect the total amount of the JV fund that will be allocated to the Cowan Share, because Cowan's position in the fund will be assessed its portion of the BCG JV's debt to Dimeff. According to Dimeff, this means that her claim "affects" the *res* and therefore she may bring all her claims against the plaintiffs in this action.

However, a defendant in an interpleader action who also counterclaims must still make **some** claim against the interpleaded funds.  *Libby, McNeill,* 592 F.2d at 507 (emphasis added).  If this were not

---

[3] All of this discussion concerns Dimeff as an individual defendant and counterclaimant.  While Dimeff was once a trustee of the Trust and may be a beneficiary of the Trust, none of this discussion concerns the claims of the Trust, which is a claimant to the *res*.

1   the case, then the defendant would just be another creditor of the stakeholder.  Here, other than the fact

2   that Dimeff happens to have a family relationship to one of the BCG JV partners, she is no different than

3   any other creditor of the BCGJV.  For example, assume that the BCG JV had hired an expert witness to

4   assist in the Exxon Valdez litigation, and that expert witness now claimed to be owed monies from the

5   BCG JV.  That (non-family) expert witness would not be allowed to assert his claim in this litigation,

6   even though his claim, if successful, would ultimately affect the amount of the JV funds allocated to the

7   Cowan Share.  Similarly, because Dimeff is not a claimant to the *res* and is merely a potential creditor of

8   the BCG JV, she may not assert her claims in this litigation.[4]  *See Libby, McNeill*, *and Libby v. City Nat.*

9   *Bank*, 592 F.2d 504, 507 (9th Cir. 1978).

10       In *Libby*, a buyer of packaged frozen meals ("Libby") contracted to purchase frozen dinners from

11   Shanghai Instant Foods ("Shanghai") and had arranged with various suppliers to furnish supplies to

12   Shanghai.  592 F.2d at 506. When Shanghai became insolvent, the suppliers looked to Libby for

13   payment.  Libby sought to interplead monies it owed Shanghai, naming the suppliers, the bankruptcy

14   trustee and a bank that had a security interest in Shanghai's accounts receivables, as defendants.  The

15   trustee disclaimed any interest in the fund, because he believed that the money belonged to the bank.  In

16   fact, the bank was the only defendant to allege any interest in the funds.  Several suppliers did not

17   answer and those who did answer disclaimed any interest in the fund and counterclaimed, alleging

18   Libby's direct and independent liability to them for supplies provided to Shanghai.  The district court

19   found that it had jurisdiction over the counterclaims, as well as the interpleader action.  In reversing the

20   district court, the Ninth Circuit held that, because the suppliers were not making a claim to the

21   interpleaded funds, it was improper for the District Court to preside over their counterclaims.  592 F.2d

22   at 507, 508.[5]  As the Ninth Circuit noted, "[w]hile the result we reach does raise the possibility of

23   multiple liability for parties such as Libby, interpleader is designed to protect the stakeholder from such

24   ────────────────

25   [4] Dimeff argues that, as long as she is a defendant, she can bring any claims against plaintiffs in
     this action even though she is not a claimant to the *res*.  But the test is not whether she is a defendant.

26   The test is whether she is a claimant to the *res*.  *Libby, McNeill,* 592 F.2d at 507. Dimeff admits that she
     is not a claimant to the *res*.

27

28   [5] In *Libby*, the Ninth Circuit ruled that interpleader would not lie at all because only the bank
     claimed an interest in the funds interpleaded.  592 F. 2d at 509.  Here, interpleader does continue
     because there are two competing claimants to the *res* – the Trust and the Estate.

1  liability only when based upon the particular fund proffered by the interpleader plaintiff, (citations

2  omitted) or, put another way, "When only a single obligation is owing." 592 F. 2nd at 509, citing

3  *Trowbridge v. Prudential Ins. Co. Of America*, 322 F.Supp. 190, 192 (S.D.N.Y. 1972).  And as the

4  Ninth Circuit further noted, "[w]hile interpleader may be useful as a means of avoiding potential

5  multiple litigation as well as multiple liability, [citations omitted], interests of party convenience and

6  judicial economy that would be served by trial of all claims in a single proceeding "cannot compel the

7  otherwise inappropriate joinder of claims in interpleader." 592 F. 2d at 509, citing *Gaines v. Sunray Oil*

8  *Co.,* 539 F.2d 1136, 1142 (8th Cir. 1976).

9      Here, Dimeff has disclaimed any interest in the interpleaded funds, and her counterclaim against

10  plaintiffs is for monies allegedly owed to her as an employee/attorney working on the Exxon Valdez

11  litigation, which is a completely separate obligation from the plaintiffs' obligation to distribute the

12  Cowan Share to the appropriate beneficiaries.[6]  Therefore, pursuant to *Libby*, this court has no

13  jurisdiction to preside over Dimeff's counterclaims against plaintiffs.[7]  On the other hand, plaintiffs

14  should not be allowed to escape any separate liability they may have to Dimeff as to her claims for

15  additional monies owed to her under the Agreement.  *See Indianapolis Colts v. Mayor & City Council of*

16  *Baltimore*, 741 F.2d 954, 955 (interpleader is warranted only to protect the plaintiff-stakeholder from

17  conflicting liability on the *same stake*).  Therefore, nothing in this order shall discharge plaintiffs from

18  any liability they may have to Dimeff as to her claim for monies allegedly owed to her under the

19  Agreement as an employee/attorney working on the Exxon Valdez litigation.

20

21

22  [6] Dimeff argues that the following language in Judge Lorenz' order allows her to bring her
counterclaim in this action: "The Estate . . . is restrained from . . . taking any action outside this
23  proceeding . . . . to preclude or impede Suzanne Dimeff from filing an answer to the complaint or cross-
claim filed in this action against her, from filing any counterclaim or cross claim in this action, or from
24  taking any steps herein to pursue or defend her claims, all of which may affect the property, instrument
or obligation involved in this interpleader action."  However, that order was issued prior to Dimeff
25  appearing in this action.  Once Dimeff admitted in her answer that she is not an individual claimant to
the Cowan Share, the Court lacked jurisdiction to hear her counterclaim.  592 F.2d at 507-508.

26  [7] Even if the Court had jurisdiction over Dimeff's counterclaim, all of the necessary parties are
not present.  In her counterclaim, Dimeff alleges that the partners of the BCG JV are Casey Gerry,
27  Robert Cowan (deceased), Richard Gerry (deceased), William Bixby and Michael Hough [Doc. No. 72
at 3] and that all of them have refused to pay her the additional monies she alleges are owed under the
28  Agreement [Doc. No. 72 at 5].  Mr. Gerry's estate or successor, Mr. Bixby, and Mr. Hough are not
parties to this action.

10cv821

IV.  CONCLUSION

**FIRST**, the Court **DENIES** defendants' motion for injunction [Doc. No. 74].

**SECOND**,  the Court **ORDERS**, *sua sponte*, that Dimeff be **DISMISSED WITHOUT PREJUDICE** as a defendant in this action, as Dimeff has admitted in her answer that she is not a claimant to the *res*. This dismissal shall have no effect on Dimeff's claims against plaintiffs for monies owed to her under the Agreement as an employee/attorney working on the Exxon Valdez litigation, and Dimeff is free to pursue those claims in other forums.  Therefore, the Court **FURTHER ORDERS**, *sua sponte*, that Dimeff's counterclaim be **DISMISSED WITHOUT PREJUDICE**.  As a result, Dimeff is **HEREBY TERMINATED** as a party to this action.

**THIRD**, now that there are only two remaining defendants/claimants – the Trust and the Estate, Plaintiff's motion for discharge [Doc. No. 77] is **GRANTED** in part as follows:

a.  Plaintiffs Casey Gerry and BCG JV are hereby discharged and relieved of any further liability relating to the *res;*  however they are not relieved of liability for any claims  relating to how the amount of the Cowan Share was determined or any related accounting issues (including the pending arbitration between the Estate and the BCGJV for an accounting of the JV funds and adjustment of the costs);

b.  On or before **July 20, 2012**, plaintiffs shall provide the remaining claimants with an accounting of attorneys fees and costs received by plaintiffs from the Exxon Valdez litigation and how that money was divided and paid out once it was received by plaintiffs;

c.  If any additional funds are identified as belonging to the late Robert Cowan, plaintiffs shall deposit those funds to the Registry of the Court, and shall simultaneously provide to the remaining claimants an accounting of the JV funds received, how those funds were divided, and to whom they were paid;

d.  Defendants/Claimants the Estate and the Trust are hereby restrained and enjoined from instituting, prosecuting, or participating in any action or proceeding against Casey, Gerry or the BCG JV relating to the *res;* however, they are not restrained from any claims relating to how the amount of the Cowan Share was determined or any related accounting issues (including the pending arbitration between the Estate and the BCGJV for an accounting of the JV funds and adjustment of the costs);

e.  The counterclaims of the Estate and the Trust against plaintiffs are here by dismissed;

10cv821

f.  Plaintiffs shall file a separate motion for attorneys fees and costs on or before **July 20, 2012**.

**FOURTH,** the Court **HEREBY ORDERS** counsel for the Trust and the Estate to contact the chambers of Magistrate Judge Skomal within 7 days of this order to schedule a case management conference.

**IT IS SO ORDERED**.


DATED:  June 13, 2012

_____
**CATHY ANN BENCIVENGO**
United States District Judge

10cv821